UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRANDON J. KOEPKE,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 3:24-CV-502 JD

**OPINION AND ORDER**

Plaintiff Brandon Koepke applied for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging that he became disabled in February 2020. His claim was rejected, leading to a review by an Administrative Law Judge ("ALJ"), who concluded that Mr. Koepke was not disabled. The Appeals Council later denied his request for review, and Mr. Koepke now seeks judicial review in this Court. For the reasons below, the Court will remand the case to the Social Security Administration for further proceedings.

**A. Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th

Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### B. Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

See *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

### C. The ALJ's Decision

Mr. Koepke filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning in February 2020. His claim was denied initially and upon reconsideration, leading to a hearing before an ALJ on August 10, 2023.

At the hearing, Mr. Koepke testified, among other things, that he suffers from severe spinal problems. He said he experiences significant limitations in physical activities, such as standing for only 10 to 15 minutes before experiencing pain in his back and hips, and his right foot going numb. (R. at 74.) According to Mr. Koepke, he can walk about two blocks before needing to rest and uses a cane, which he started using about a year ago to alleviate pressure on his sciatic nerve. (*Id*.) He had two back surgeries, one in October 2020 and another in May 2021, and continues to experience pain despite physical therapy and medication. His pain is managed with hydrocodone, Flexeril, and Celecoxib, but he still rates his daily pain at a four to five out of ten. (R. at 75.) Medications can make him dizzy and fatigued. Mr. Koepke testified that his physical impairments affect his ability to perform household chores, such as laundry, and he sometimes requires assistance with dressing. (R. at 80.)

Mr. Koepke also testified about his mental health. He said he suffers from depression and anxiety, which are exacerbated by stress and crowds, leading to panic attacks at least once a month. (R. at 81.) He also said that he experiences irritability due to constant stress, although he has learned to manage his anger better. (R. at 82.) According to Mr. Koepke, his mental impairments, including insomnia, affect his concentration and focus, and he struggles to sleep, often getting only three to four hours a night. (*Id*.) He is currently on medication for anxiety,

prescribed by his family physician, which has helped reduce the frequency of his panic attacks. (R. at 84.)

On July 6, 2023, the ALJ issued a decision finding that Mr. Koepke was not disabled. (R. at 20.) In doing so, the ALJ employed the customary five-step analysis. At Step 2, the ALJ determined that Mr. Koepke suffered from the following severe impairments: "degenerative disc disease of the lumbar spine; chronic pain syndrome; and obesity" (R. at 12.)

Next, using the "special technique" provided in 20 C.F.R. § 404.1520a,[1] the ALJ identified and evaluated the severity of Mr. Koepke's mental impairments. The ALJ found that Mr. Koepke's mental impairments include depression, anxiety/panic disorder, and cannabis use disorder (early in full remission). The ALJ believed that these impairments are non-severe as they do not cause more than minimal limitation in performing basic mental work activities. (R. at 13.) According to the ALJ, Mr. Koepke's mental health treatment has been minimal, with medication prescribed for anxiety and panic attacks, which Mr. Koepke finds moderately effective. In addition, psychological evaluations and consultative examinations revealed normal social interactions, intact memory, and concentration, with no significant mental health limitations observed. (R. at 13–14.) Still, relying on the state agency physicians and consultative examiners, the ALJ found that Mr. Koepke suffered mild limitations in: understanding,

---

[1] "The special technique requires the ALJ to first determine whether a claimant has a medically determinable mental impairment(s). § 404.1520a(b)(1). This is done by evaluating the claimant's 'pertinent symptoms, signs, and laboratory findings.' *Id*. If the claimant has a medically determinable medical impairment, the ALJ must document that finding and rate the degree of function limitation in four broad 'functional areas:' activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. § 404.1520a(c)(3)" These areas are known as the 'B criteria.'" *Pepper v. Colvin*, 712 F.3d 351, 365 (7th Cir. 2013) (other citations omitted).

remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself.[2] (R. at 14.)

At Step 4, the ALJ determined Mr. Koepke's residual functional capacity ("RFC"),[3] finding that he can

> perform sedentary work[4] . . . except the claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant can never climb ladders, ropes, or scaffolds. The claimant can have no concentrated exposure to extreme cold/heat, wet, slippery surfaces, unprotected heights, and dangerous moving machinery.

(R. at 15.)

The ALJ posed this RFC to the vocational expert ("VE") as part of a hypothetical question. The VE testified that there were jobs available in significant numbers in the national economy for such an individual: audit clerk, charge account clerk, and telephone quotation clerk. (R. at 89.) The ALJ then followed up with another hypothetical, keeping the same conditions as in the RFC but adding that "this individual can understand, remember and carry out simple instructions and make simple work-related decisions, can tolerate occasional changes in work

---

[2] The areas of mental functioning are based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation. A person has a moderate limitation if his mental "functioning . . . independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c). A moderate limitation is greater than a mild limitation, which means that mental function is "slightly" limited, but less than marked limitation, which means that the mental function is "seriously limited." *Id*.

[3] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567. "Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983).

setting, can tolerate occasional interaction with coworkers, supervisors and the public, but no teamwork or tandem tasks." (*Id*.) The VE answered that the additional qualifications "would allow for the Audit Clerk, but would rule out the Charge Account Clerk and the Telephone Quotation Clerk." (R. at 90.) Even so, according to the VE, such a person could work as a parts inspector or table worker. (*Id*.) The VE further testified that employers generally do not tolerate "absenteeism beyond one time per month on a regular and consistent basis, or off-task behavior in excess of 10% of the production period, again on a regular basis . . . ." (R. at 91.)

In his decision, the ALJ recognized that Mr. Koepke has had two back surgeries and physical therapy but still experiences chronic back pain and decreased mobility, with pain radiating to the hips and lower extremities, and sometimes uses an unprescribed cane for support. (R. at 16.) In fact, Mr. Koepke's doctors suggested that he needs an additional back surgery. At the same time, the ALJ found that the physical examinations generally show full strength in Mr. Koepke's extremities and MRI imaging shows lumbar spine stability.

In fashioning the RFC, the ALJ said nothing about Mr. Koepke's mental functioning limitations.

Dr. Clayton Alexander is Mr. Koepke's primary care physician. The ALJ considered his medical opinions but found them unpersuasive. Dr. Alexander opined that Mr. Koepke is limited to standing 1 hour and sitting 3 hours in a workday and ultimately unable to sustain work continuously. The ALJ rejected these opinions, finding that the limitations weren't supported by clinical findings: exams noted only tenderness and decreased spinal range of motion, without deficits in strength or upper extremity abilities. The ALJ also observed that the assertion of disability is an issue reserved to the Commissioner. (R. at 18.)

The ALJ also considered the opinion of Dr. Deleeuw, Mr. Koepke's treating physician, who wrote a letter stating that Mr. Koepke was temporarily disabled. The ALJ found this opinion generally persuasive reasoning that it was supported by the record insofar as the suggested disability was temporary. (*Id*.) The ALJ did not address Dr. Deleeuw's subsequent letter where he said that Mr. Koepke "attended formal therapy without relief of his pain," and that he had encouraged Mr. Koepke to apply for disability. (R. at 747)

The ALJ also considered the opinions of the two state agency physical consultants. The consultants opined that Mr. Koepke was limited to light exertional work with postural and environmental limitations. (R. at 17.) The ALJ found these opinions unpersuasive due to Mr. Koepke being more limited by decreased mobility, spine disorder, chronic pain, and surgical history. (*Id*.)

Finally, consultative examiner Stephen Parker opined that Mr. Koepke was limited to less than sedentary work and required use of a cane. The ALJ found this opinion unpersuasive stating that it was based solely on subjective reports and was inconsistent with Dr. Parker's own exams (which noted intact strength and lack of cane use) and with other clinical findings in the record. (R. at 18.)

**C. Discussion**

In his appeal, Mr. Koepke argues that the ALJ committed several reversible errors. First, he submits that the ALJ improperly evaluated his subjective symptom testimony by using boilerplate reasoning, ignoring required factors under SSR 16-3p, and dismissing evidence— such as intensive treatment history and third-party statements—without meaningful analysis or support, resulting in a flawed credibility assessment. Second, the ALJ failed to explain how Mr.

Koepke's mild mental impairments affected his RFC or why they were not included, despite legal requirements to assess and account for even mild limitations in mental functioning. Finally, Mr. Koepke argues that the ALJ failed to properly evaluate the medical opinions. He states that the ALJ erred by rejecting all medical opinions regarding Mr. Koepke's physical limitations—without adopting any expert assessments or providing a clear evidentiary basis for the chosen RFC—creating an evidentiary gap in violation of SSA regulations.[5] The latter argument warrants remand for further consideration. As a result, the Court addresses that argument alone and declines to reach the remaining two, leaving them to be resolved upon remand if necessary.

**(1)** *Medical Opinions*

Under the regulations, an ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). But the ALJ must explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). When considering the persuasiveness of any medical opinion, an ALJ must consider the following factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies.

---

[5] There are other arguments interspersed in Mr. Koepke's briefs, but they are covered by the three main arguments noted here or are too vague to mention.

20 C.F.R. §§ 404.1520(c), 416.920c(c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a). These are the factors the ALJ must explicitly discuss, even though the ALJ need only consider the other factors. 20 C.F.R. § 404.1520c(b). Failure to adequately discuss supportability and consistency requires remand. *See Tammy M. v. Saul*, 2021 WL 2451907, at *7–8 (N.D. Ind. June 16, 2021). The more consistent the medical opinion is "with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive" the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). For a provider's opinion to be supportable, it must be based on "objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "At the end of the day, once the administrative law judge properly considers these factors, we must allow that decision to stand so long as the administrative law judge minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) (quotation marks and citation omitted).

Here, the ALJ considered the opinions of four physicians regarding Mr. Koepke's physical impairments and found them unpersuasive.[6] The opinions ranged from limiting Mr. Koepke to light exertion to assessments indicating he did not meet the requirements for sedentary work. In the former category are the opinions of state agency physicians who thought that Mr.

---

[6] In the case of Dr. Deleeuw, the ALJ found the opinion to be "generally persuasive" to the extent that Dr. Deleeuw stated on July 19, 2021, that Mr. Koepke was temporarily disabled. The ALJ did not address Dr. Deleeuw's later statement, on October 29, 2021, that he recommended to Mr. Koepke to apply for disability benefits.

10

Koepke is capable of light work. The ALJ discounted these opinions because Mr. Koepke suffered decreased mobility resulting from his spine disorder, chronic pain, and surgical history. (R. at 17.)

On the other end of the spectrum, the ALJ found unpersuasive the opinions of consultative examiner Dr. Parker and Mr. Koepke's primary care physician, Dr. Alexander. Dr. Parker opined, among other things, that Mr. Koepke could not stand or walk for at least two hours in an eight-hour workday. (R. at 350.) The ALJ found this opinion unpersuasive because it was inconsistent with Dr. Parker's own examinations (which noted intact strength and the lack of cane use) and with other clinical findings in the record. Similarly, Dr. Alexander opined that Mr. Koepke is limited to standing for one hour and sitting for three hours in a workday and cannot sustain work continuously. The ALJ rejected these opinions for essentially the same reasons as those given for rejecting Dr. Parker's opinions. (R. at 18.)

By finding each expert's opinions about Mr. Koepke's ability to stand or walk "unpersuasive," the ALJ has left an "evidentiary deficit" and impermissibly created her own physical RFC assessment (sedentary exertion), which appears to be a middle ground between the two sets of experts. *Cf. Suide v. Astrue*, 371 Fed. Appx. 684, 689–90 (7th Cir. 2010) (finding that an ALJ's lack of reliance on any physician opinion evidence created an evidentiary deficit); *Tammy M. v. Saul*, No. 2:20CV285, 2021 WL 2451907, at *8 (N.D. Ind. June 16, 2021) ("Although the ALJ is not required to adopt a specific physician opinion, by not adopting any medical opinion, the ALJ faced an evidentiary deficit."). This approach, constructing a middle ground without logically connecting the evidence to the RFC findings, is impermissible. *Adelina M. v. Kijakazi*, No. 19 C 5294, 2022 WL 375554, at *8 (N.D. Ill. Feb. 8, 2022) ("The ALJ cannot reject all the relevant medical RFC opinions and then construct a middle ground and come up

11

with her own physical RFC assessment without logically connecting the evidence to the RFC findings."). Although, as the Commissioner points out, "determining claimant's capacity was the ALJ's duty under the regulations (Def.'s Resp. Br., DE 17 at 13 (citing 20 C.F.R. § 404.1546(c)), the ALJ may not interpret raw medical data. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014), as amended on denial of reh'g (Oct. 24, 2014).

To the extent the ALJ concluded that Mr. Koepke can stand or sit for two hours in a workday based solely on full strength in all extremities, that conclusion is not supported by substantial evidence. The ALJ has not explained how a finding of full strength offsets her other findings—that Mr. Koepke has undergone two back surgeries (and may require a third), completed physical therapy, and continues to experience chronic back pain and decreased mobility, with pain radiating to his hips and lower extremities. (R. at 16.) The ALJ also suggests that Mr. Koepke has received "conservative" treatments to manage his back pain. (R. at 17.) But, again, during the relevant period, Mr. Koepke underwent two back surgeries, injections, and physical therapy, none of which resolved his pain, leading his doctor to recommend that he seek a surgeon for a third surgery. (R. at 511.) There's no logical bridge here from the evidence to the conclusion that Mr. Koepke is capable of sedentary work. *See Gipson v. Colvin*, Case No. 16–C–0865, 2017 WL 120918, at *6 (E.D. Wis. Jan. 12, 2017) (finding the ALJ's conclusion that the claimant's condition improved with conservative treatment did not withstand scrutiny when the record revealed multiple instances where epidural injections and physical therapy only provided partial or temporary relief). Simply put, without the ALJ giving weight to experts who opined on the claimant's physical functional limitations, it is unclear to the Court how the ALJ arrived at her RFC. Thus, the Court finds that a remand is necessary due to the evidentiary deficit created by the ALJ's rejection of the above noted experts' opinions. *See, e.g.*, *Suide v. Astrue*, 371 F.

App'x 684, 690 (7th Cir. 2010) (remanding where ALJ created an evidentiary deficit when the ALJ rejected treating physician's opinion and then made an RFC determination without supporting medical evidence).

In his response, the Commissioner largely ignores the issue of the evidentiary gap created by the ALJ when she rejected the medical opinions. Instead, the Commissioner focuses narrowly on the justification for rejecting the medical opinions. (*See* Def.'s Br., DE 17 at 10–14.) But even here, the ALJ's reasoning is problematic. The ALJ's primary rationale for discounting Dr. Parker's, Dr. Deleeuw's, and Dr. Alexander's opinions is the fact that Mr. Koepke's extremity strength was found to be normal. (R. at 18.) "But findings of normal muscle strength, reflexes, or sensation are not necessarily inconsistent with chronic back pain. As several courts in this circuit have acknowledged, even full muscle strength is consistent with impairments that cause pain and thereby affect a claimant's functional limitations, including limited abilities to stand or walk." *Blankenship v. Comm'r of Soc. Sec.*, No. 1:22-cv-00018-SLC, 2022 U.S. Dist. LEXIS 221379, at *31 (N.D. Ind. Dec. 7, 2022) (quoting *Otis S. v. Saul*, No. 1:18-CV-372-WCL-JPK, 2019 U.S. Dist. LEXIS 225716, 2019 WL 7669923, at *3 (N.D. Ind. Dec. 19, 2019); *see also Giza v. Comm'r of Soc. Sec.*, No. 2:20-cv-00263-SLC, 2021 U.S. Dist. LEXIS 191895, at *14-15 (N.D. Ind. Oct. 5, 2021) ("Indeed, even normal gait and muscle strength are not necessarily inconsistent with claims of debilitating pain.") (citing to *Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015) ("The administrative law judge said that Adaire was seen to be able to move around 'with ease and had a normal gait.' In other words, he does not limp. She didn't explain why, if the applicant's evidence of pain were truthful, it would imply that he limps.") Yet the ALJ offers no explanation of how normal extremity strength contradicts the medical opinions or how it correlates with the severity of Mr. Koepke's back pain in this specific case. Instead, the ALJ

13

resorts to a sweeping conclusion that the doctors based their opinions strictly on Mr. Koepke's subjective reports. But the record contradicts this. For instance, Dr. Parker documented objective clinical observations, including bilateral antalgic gait, an inability to walk on heels, ataxia during tandem walking, and difficulty recovering from a full squat. Moreover, although the ALJ references the "clinical findings of record" to dismiss Dr. Parker's conclusions, the pages cited (R. at 496, 573, 584, 588, 590–91, 596–97, 603, 779, 872–73, 876–77, 880–81) consistently document Mr. Koepke's ongoing back problems and there are no obvious contradictions between those medical records and Dr. Parker's assessment.[7] So "it appears that the ALJ succumbed to the temptation to 'play doctor' when he independently concluded that normal muscle strength is inconsistent with chronic pain." *Blankenship*, No. 1:22-cv-00018-SLC, 2022 U.S. Dist. LEXIS 221379, at *31. This further points to the need to remand this case.

Two other points before closing. First, Mr. Koepke notes in his briefs that the ALJ failed to explain how his mild mental impairments affected his RFC or why they were not included. This assessment appears to be correct. However, the error may be harmless, as the vocational expert testified—in response to additional hypothetical questions—that there are jobs in the national economy for an individual with Mr. Koepke's RFC who "can understand, remember, and carry out simple instructions; make simple work-related decisions; tolerate occasional changes in the work setting; and tolerate occasional interaction with coworkers, supervisors, and the public, but no teamwork or tandem tasks." (R. at 89.) Nonetheless, on remand, the ALJ should assess and account for all mental limitations. *See Yurt v. Colvin*, 758 F.3d 850, 857 (7th

---

[7] Neither the ALJ nor the Commissioner—who also relies on citations to these pages—provide any parenthetical explanation or substantive analysis to guide the Court's review of these medical records.

Cir. 2014) ("As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record.")

Second, Mr. Koepke argues that the ALJ failed to account for his obesity in the RFC assessment. While the Court has not addressed the legal effect of this omission, on remand, the ALJ should ensure that this impairment is properly considered when formulating the RFC.

### E. Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: July 28, 2025

                                                     /s/ JON E. DEGUILIO
                                                     Judge
                                                     United States District Court